## DiBucci v. Delaware County Christian Day School

*Max W. Gibbs, for* for plaintiff.
*George J. McConchie,* for defendant.

JEROME, J., March 1, 1972.—This matter comes before the court on motions for a new trial and judgment n.o.v. filed on behalf of defendant, Delaware County Christian Day School. The matter was tried before a judge and jury and a verdict was returned in the amount of $30,000 in plaintiff's favor. Neither side questions the amount of the verdict, since it was admitted plaintiff did suffer rather severe injuries in the accident.

The thrust of defendant's motions, however, is twofold. With regard to the motion for a judgment n.o.v., it contends that neither of the employes of defendant who were involved in the incident in question were acting within the scope of their authority and, therefore, their negligence cannot be imputed to defendant. In support of its motion for a new trial, defendant contends that the verdict was against the weight of the evidence and that the trial court committed certain errors in refusing two of its points for charge.

From the facts presented, it was shown that plaintiff in September of 1964 was a bricklayer working on a new building being constructed on defendant's school property. At the time in question he was on a scaffold about 25 feet above the ground attending to his duties. About 15 or 20 feet from the point where he was working there was a tree, which apparently contained a hornets' nest. At the time in question, two of defendant's employes and a third man were attempting to remove the hornets' nest from the tree. One of the employes held the ladder while the workman whom the employes had gotten to help them, sawed the limb from the tree in which the nest was located. At the same time, the other employe fired into the nest a fire extinguisher containing carbon dioxide. As a result of the carbon dioxide being fired into the nest, the hornets became infuriated, started to swarm and in a matter of seconds surrounded plaintiff. He became frightened and in an effort to avoid being stung by the hornets, he began to run as quickly as he could, dislodging the wooden planking of the scaffold which gave way beneath his feet causing him to fall to the ground sustaining severe injuries. There is no question but that the scaffold was properly constructed and it gave way due to the weight of plaintiff caused by his sudden running to escape the hornets.

Plaintiff called as a witness a Mr. Akers who identified himself as the building superintendent in charge of buildings and maintenance for defendant, Delaware County Christian Day School. His duties included handling problems on the grounds, including mowing the grass, trimming the hedges and trimming some of the bushes and removal of dead branches. He stated when problems of particular expertise were required such as plumbing or electrical work, he

called upon a member of the "school family," i.e., a parent of one of the students, a teacher or even a student or anyone who would have more experience in doing the work. On some occasions, he would report the need for assistance to a Mr. Park who is the business manager, but on other occasions he contacted the individual himself. On this particular day he was informed that the hornets were bothersome to the various workmen who were attempting to complete their construction on the building as soon as practical. Apparently, the work was being done in late summer prior to the opening of the school. In an attempt to enable the workmen to finish their work, Mr. Akers undertook to remove the hornets' nest. He spent somewhere between a half an hour and an hour in attempting the removal. Prior to so doing, he looked for Mr. Park who was at that time having lunch in Paoli. After attempting to rid the tree of the hornets' nest himself, he then went to enlist the assistance of the school biology teacher, a member of the "school family." The biology teacher suggested using carbon dioxide. It was then decided that the workman who had informed Mr. Akers of the condition would saw the limb off the tree while at the same time the biology teacher would squirt the carbon dioxide into the nest. Mr. Akers obtained a ladder and held the ladder for the biology teacher as he squirted the carbon dioxide into the nest.

Plaintiff also introduced evidence at trial from an expert on hornets to the effect that the worst possible thing that could have been done was to squirt carbon dioxide into the hornets' nest, because it had the effect of infuriating the hornets. Further, the evidence indicated that the hornets started to swarm before the nest hit the ground or immediately upon the carbon dioxide being squirted into it.

Defendant argues that there was no express authority for Mr. Akers to remove the hornets' nest and that he had never removed one before. To be sure, there was no such express authority; however, this is not the type of situation which arises every day. Under general agency law there is a doctrine of implied authority where the agent's authority can be implied from the conduct of the parties and his general duties, and this is a question for the jury. From the evidence presented, the jury could well have found that Akers was acting not as a favor to the workmen who were requesting his services but rather to benefit and to further his employer's own business and for a purpose incidental to his other duties. He first checked with his superior Mr. Park, who was not present. He then used his own discretion which he had done on prior occasions and enlisted the services of another member of the "school family," namely, a biology teacher who he supposed might have had some degree of expertise in this matter. It is unquestioned that Akers and the biology teacher were employes of defendant, that the accident occurred on defendant's premises, and during Mr. Akers' work day and at the expense of as much as one full hour of his work time. In view of this, the court is of the opinion that the matter was properly left for the jury and they could well have found implied authority for the actions of Mr. Akers.

With regard to the motion for a new trial, defendant first argues that the verdict was against the weight of the evidence. The thrust of plaintiff's argument is that plaintiff convicted himself of contributory negligence in his own case. Mr. Akers, who testified in plaintiff's case, stated that a minute or two before the carbon dioxide was fired into the hornets' nest he shouted out a warning to several of the workmen in

the area that they should move to another place. Even if we were to assume that this testimony was sufficient to constitute a warning to plaintiff, defendant ignores plaintiff's own testimony on the matter which was very clear and definite to the effect that no warnings had been given to him and that he heard no warnings given. This conflict in testimony, even though it appeared in plaintiff's case, could only be resolved by the jury and they did resolve it in plaintiff's favor.

Also in support of its motion for a new trial, defendant claims it was error for the court to refuse to affirm and read two of its points for charge. Both points, however, were misleading. The first point which was refused, read as follows;

"It was the uncontradicted testimony of Ivan Akers, defendant's building superintendent, called by plaintiff as his witness, that no emergency existed as respected the removal of the hornets' nest. In the absence of an emergency situation, Mr. Akers would have no authority to engage the biology teacher to assist in the removal of the hornets' nest, even if you should find that Mr. Akers was acting within the scope of his employment at the time. White v. Consumers Fin. Serv. Inc., 339 Pa. 417 (1940)."

This point for charge assumed facts which it was up to the jury to find; thus, the existence or the non-existence of an emergency situation, the relevance as to such a situation and Mr. Akers' authority to engage the biology teacher to assist him in removal of the nest are always in the jury's province and it was inappropriate to assume any of these factors as true.

The remaining point which was refused to be read was as follows:

"Since Plaintiff called Mr. Akers as his witness, the

plaintiff is bound by the testimony of Mr. Akers unless it is inherently unreasonable or improbable or is contradicted."

As far as this point is concerned, although as an abstract legal principle it may be clearly stated, the court is of the opinion that the statement was not helpful to the jury and, taken out of context, it could be confusing to the jury. Specifically, defendant did not make clear what statements in particular he might have been referring to. Certainly, with regard to the warnings allegedly given by Mr. Akers, these statements would not be binding on plaintiff, since they were contradicted. Further, as to any conclusory statements made by Mr. Akers, these also would not be binding on plaintiff. Finally, it is the jury's province to determine credibility and, as indicated, the proposed point, taken out of context, could only be confusing.

For the above reasons, we entered our order of January 7, 1972, dismissing defendant's motions for judgment n.o.v. and for a new trial.